**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-22324-BLOOM/Otazo-Reyes**

MONICA BURILLO DE LARREA,

      Plaintiff/Counter Defendant,

v.

GOLDEN YACHT CHARTERS,
INC.,

      Defendants/Counter-Plaintiff,

JUAN ROJAS,

      Defendant,

v.

SOLEADO CORPORATION,

      Third-Party Defendant.

_____/

## ORDER ON MOTION TO DISMISS AMENDED COUNTERCLAIM

**THIS CAUSE** is before the Court upon Plaintiff Monica Burillo de Larrea ("Burillo de Larrea") and Third-Party Defendant Soleado Corporation's ("Soleado") Motion to Dismiss Defendant Golden Yacht Charters, Inc.'s ("Golden Yacht") Amended Counterclaim, ECF No. [57] ("Motion"). Golden Yacht filed a Response to the Motion, ECF No. [59] ("Response"), to which Burillo de Larrea and Soleado filed a Reply, ECF No. [66] ("Reply"). The Court has carefully reviewed the Motions, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

## I.     BACKGROUND

This matter stems from a lawsuit Burillo de Larrea initiated against Defendants Golden Yacht and Juan Rojas ("Rojas") on June 24, 2021. ECF No. [1]. In her Complaint, Burillo de Larrea asserted the following claims for relief: conversion (Count I); violation of Florida Deceptive and Unfair Trade Practices Act (Count II); and unjust enrichment (Count III). *Id.* Golden Yacht and Rojas filed their Answer and asserted a Third Party Complaint against Soleado and Counterclaim against Burillo de Larrea. ECF No. [23]. Burillo de Larrea filed a Motion to Dismiss Counts I and III of Golden Yacht's Counterclaim which, following a hearing, the Court granted leave to amend. ECF No. [46].

Golden Yacht thereafter filed the operative Amended Answer and Amended Counterclaim ("Counterclaim"). ECF No. [53]. According to the Counterclaim, Soleado is owned, managed, and controlled by Burillo de Larrea, its sole principal. *Id.* ¶ 7. In 2016, Golden Yacht executed a Charter Agreement ("2016 Charter Agreement") for the chartering and maintenance of Soleado's Feretti Yacht ("Yacht"). *Id.* ¶ 8. The 2016 Charter Agreement provides for certain expenses to be paid by Golden Yacht and payment of expenses which were not included in the 2016 Charter Agreement would be discussed by the parties in good faith. *Id.* ¶ 9. According to the Counterclaim, Burillo De Larrea agreed to pay for the remaining expenses. *Id.* ¶ 10. It was understood by Golden Yacht and Burillo de Larrea that Soleado had no other source of income (aside from Burillo de Larrea) and the only way that Soleado could pay Golden Yacht for its' services and agreed-upon expenses was for Burillo de Larrea to personally pay for the expenses. *Id.* ¶ 11. Based on the terms of the 2016 Charter Agreement and the understanding between Golden Yacht and Burillo de Larrea, Golden Yacht performed its chartering and management services and paid for expenses related to the Yacht and chartering services in 2016. *Id.* ¶ 12. Under the terms of the 2016 Charter Agreement, Burillo de Larrea paid for Soleado's expenses, which included "personal use of the yacht," insurance,

Case No. 21-cv-22324-BLOOM/Otazo-Reyes

administrative costs of the flagship of the Yacht, and repairs needed based on prior use of the Yacht. *Id.* ¶ 13. All these expenses were paid from Burillo de Larrea's personal bank account and credit cards. *Id.* ¶ 14.

The Counterclaim further alleges that in 2017, Rojas on behalf of Golden Yacht approached Burillo de Larrea to discuss changing the 2016 Charter Agreement. *Id.* ¶ 15. Under the new 2017 Charter Agreement between Golden Yacht and Burillo de Larrea ("2017 Charter Agreement"), the parties established a new cost sharing structure for expenses related to the Yacht. *Id.* ¶ 18. The 2017 Charter Agreement consisted of the following terms:

1. Cost sharing provisions for all repair, administrative, and maintenance costs and losses related to the charter and management operations of the Yacht (which were not covered by the revenue generated from the chartering operations);

2. Golden Yacht was permitted to continue chartering and maintaining operational control of the Yacht and Golden Yacht would receive a percentage of all services performed by Golden Yacht;

3. Burillo de Larrea had the right to use the Yacht with a crew for a certain number of days per year;

4. The parties were to discuss additional expenses that may have been outside of the normal or originally contemplated agreement.

*Id.* ¶ 19. Although there was no written agreement, the parties memorialized the 2017 Charter Agreement through verbal discussions, emails, and the parties' course of conduct over a period of four years. *Id.* ¶¶ 20-21.

During the four-year period of the 2017 Charter Agreement, Golden Yacht provided services and paid nearly $2 million in expenses for the Yacht (beyond the revenue generated from the chartering of the Yacht pursuant to the 2017 Charter Agreement). *Id.* ¶ 22. Burillo de Larrea

3

was billed for and paid for some of the expenses, with the exception of chargebacks made by Burillo de Larrea in 2021 and an additional outstanding balance of $80,000.00 for services and expenses (as discussed more fully below). *Id.* ¶ 23. Burillo de Larrea knew of and consented to pay the expenses related to the 2017 Charter Agreement, as evidenced by several communications between Rojas, Golden Yacht's bookkeeping department, Burillo de Larrea, Burillo de Larrea's assistant, and others. *Id.* ¶ 24. Burillo de Larrea never objected to the use of her credit card or sending money personally for expenses related to the Yacht or the 2017 Charter Agreement. *Id.* ¶ 25.  In 2021, Golden Yacht received a termination letter from Burillo de Larrea. *Id.* ¶¶ 26, 27.

In early 2021, Burillo de Larrea started issuing chargebacks on her American Express account stating that the charges from Golden Yacht were unrecognized. *Id.* ¶¶ 23, 27. As a result, American Express reimbursed Burillo de Larrea $69,632.85 from Golden Yacht's account. *Id.* ¶ 28. Burillo de Larrea also refused to pay for outstanding expenses of approximately $80,000.00. *Id.* ¶ 29. According to the Counterclaim, Burillo de Larrea then filed this lawsuit attempting to recover $2 million, the amount that she was charged for the Yacht's expenses over the last four years. *Id.* ¶ 30.

Based on the foregoing, Golden Yacht asserted the following claims for relief: breach of contract against Burillo de Larrea (Count I); breach of contract against Soleado (Count II); unjust enrichment against Burillo de Larrea in the alternative (Count III); unjust enrichment against Soleado in the alternative (Count IV); and promissory estoppel against Burillo de Larrea (Count V). *See generally* ECF No. [53]. Burillo de Larrea and Soleado now seek dismissal of the Counterclaim as a shotgun pleading, and further seek dismissal of Counts II through V for failure to state a claim. *See generally* ECF No. [57].

## II.      LEGAL STANDARD

### A.      Shotgun Pleading

"A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'" *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x. 274, 277 (11th Cir. 2008) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1128-29 (11th Cir. 2001)). The most common type of shotgun pleading is one "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321(11th Cir. 2015). The next most common type is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. The third type of shotgun pleading is one that does not separate into "a different count each cause of action or claim for relief." *Id.* at 1323. Fourth, and finally, there is the relatively rare shotgun pleading that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* The similarity between "all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

The Eleventh Circuit has repeatedly condemned the use of shotgun pleadings for "imped[ing] the administration of the district courts' civil dockets . . . ." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 806 n.4 (11th Cir. 2010) (citation omitted). Indeed, shotgun pleadings require the court to sift through rambling and often incomprehensible allegations in an attempt to separate the meritorious claims from the unmeritorious, resulting in a "massive waste of judicial and private resources." *Id.* (citation omitted); *see also Strategic Income*

*Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 (11th Cir. 2002). The Eleventh

Circuit, thus, has established that shotgun pleading is an unacceptable form of establishing a claim

for relief. *Weiland*, 792 F.3d at 1331.

##### B.    Federal Rule of Civil Procedure 12(b)(6)

A pleading in a civil action must contain "a short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need

detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule

8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-

me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual

enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the

plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor

of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304

F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F.

Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and

courts "are not bound to accept as true a legal conclusion couched as a factual allegation."

*Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's

Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual

allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct

rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v.

Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

A court, in considering a Rule 12(b)(6) motion, "may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

### III. DISCUSSION

Burillo de Larrea and Soleado seek to dismiss all counts of the Counterclaim with prejudice on the basis that the Counterclaim is a shotgun pleading. They also seek to dismiss Counts II, III, IV, and V of the Counterclaim with prejudice on the basis that those Counts fail to state a claim for which relief could be granted. The Court will address each argument in turn.

#### A. Shotgun Pleading

Burillo de Larrea and Soleado first seek dismissal of the Counterclaim on the grounds that it is an impermissible shotgun pleading because every count realleges and incorporates by reference the same background factual allegations. ECF No. [57] at 4. The Court disagrees. Although incorporation of all previous counts can be a basis for dismissal, the incorporation of all the factual allegations into each count is not. *See Isaac v. U.S.*, 809 F. App'x. 595, 598 (11th Cir. 2020) (citing *Weiland*, 792 F.3d at 1321-23); *Bradbury v. NCL (Bahamas) Ltd.*, 21-20477-CIV, 2021 WL 2530664, at *3 (S.D. Fla. June 17, 2021) (denying motion to dismiss complaint because it is acceptable to incorporate every factual allegation).

Burillo de Larrea and Soleado also argue that the Counterclaim impermissibly incorporates irrelevant facts into each count. ECF No. [57] at 5. However, dismissal is not warranted simply because the Counterclaim includes unnecessary factual allegations. *See Bradbury*, 2021 WL

2530664, at *3 (denying motion to dismiss a complaint as a shotgun pleading where some irrelevant facts did not preclude the complaint from adequately putting defendant on notice of the facts giving rise to the claims); *see also CS Bus. Sys.*, 2017 WL 1155379, at *2-3 (M.D. Fla. Mar. 28, 2017) (denying a motion for a more definite statement where the counts were not *only* supported by irrelevant facts and defendant's simple denial of the irrelevant facts in the complaint would suffice). Accordingly, the Court does not find that the Counterclaim is a shotgun pleading.

### B.  Failure to State a Claim

Burillo de Larrea and Soleado next seek dismissal of Counts II through V for failure to state a claim. ECF No. [57] at 6. The Court will address each count in turn.

### 1.  *Count II–Breach of Contract against Soleado*

Soleado first seeks dismissal of Golden Yacht's breach of contract counterclaim against Soleado (Count II). ECF No. [57] at 6-7. Soleado argues that it was not a party to the 2017 Charter Agreement and it cannot be held liable for breach of a contract to which it was not a party. *Id*. Golden Yacht contends that it has sufficiently plead a claim of unjust enrichment against Soleado. ECF No. [59] at ¶¶ 37-42. The Court disagrees with Golden Yacht's position. According to the allegations in the Counterclaim, Soleado was not a party to the Agreement. The Counterclaim states that Golden Yacht and Burillo de Larrea entered into the 2017 Charter Agreement. ECF No. [53] ¶¶ 18, 20.

Soleado also argues that the Court should dismiss the breach of contract claim against Soleado because it was not an intended third-party beneficiary of the contract. ECF. No. [57] at 6. Golden Yacht argues that, pursuant to the 2017 Charter Agreement, Burillo de Larrea promised to pay Golden Yacht for expenses and services related to the Yacht for the benefit of Soleado. ECF No. [53] ¶ 51. The Florida Supreme Court has found that

> The doctrine of third-party beneficiaries provides that under certain circumstances, a person may sue to enforce a contract, even though the person is not a party to the contract. "To establish an action for breach of a third party beneficiary contract, [the third-party beneficiary] must allege and prove the following four elements: '(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach.'"

*Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146, 148 (Fla. 2016) (internal citations omitted).

Here, Golden Yacht, a party to the 2017 Charter Agreement, seeks to bring a breach of contract claim against Soleado, a non-party. However, even if Soleado was an intended third-party beneficiary, it is inconsistent with the law to allow Golden Yacht to bring a breach of contract claim against Soleado because "the third-party beneficiary doctrine enables a ***non-contracting party*** to enforce a contract against a contracting party—not the other way around. The third-party beneficiary doctrine does not permit two parties to bind a third—without the third party's agreement—merely by conferring a benefit on the third party." *Id.* at 149 (citations omitted) (emphasis added); *see Certain Underwriters at Lloyd's of London v. Black Gold Marine, Inc.*,19-23586-CIV, 2021 WL 2653819, at *4 (S.D. Fla. Feb. 8, 2021) (dismissing a breach of contract claim brought by a contracting party contract against a third party beneficiary); *Ray v. NPRTO Fla., LLC*, 322 F. Supp. 3d 1261, 1263 (M.D. Fla. 2017) ("[A] third-party beneficiary who does not sue to enforce the contract is not bound by the terms to which she did not agree.").Accordingly, the Court dismisses Count II of the Counterclaim against Soleado.

### 2.   Count III–Unjust Enrichment against Burillo de Larrea

Burillo de Larrea next seeks dismissal of Golden Yacht's unjust enrichment counterclaim (Count III). ECF No. [57] at 7. Burillo de Larrea argues that Golden Yacht failed to allege any direct benefit to Burillo de Larrea because the services rendered by Golden Yacht were for the Yacht owned by Soleado, and Burillo de Larrea's "retention of benefits" for the unpaid services and

expenses were only within the scope of her status as Soleado's principal. ECF No. [57] at 7. Golden Yacht contends that it has sufficiently plead a claim of unjust enrichment against Burillo de Larrea. ECF No. [59] at 11. Golden Yacht points to its allegation that "Golden Yacht has conferred a direct benefit of $150,000 on Burillo de Larrea by way of Burillo de Larrea's chargebacks in the amount of $69,832.85 (which were returned to her directly) and as a result of Burillo de Larrea's retention of the benefits of Golden Yacht's services and expenses not paid by Burillo de Larrea despite her agreement, representations and promises to pay Golden Yacht for the same." *Id.* at ¶ 59. The Court agrees with Golden Yacht's position.

In Florida, "[t]o establish a cause of action for unjust enrichment/restitution, a Plaintiff must show that '1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012) (quoting *Della Ratta v. Della Ratta*, 927 So. 2d 1055, 1059 (Fla. 4th DCA 2006)); *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1368 (S.D. Fla. 2015).

Golden Yacht has alleged that (1) it had conferred a direct benefit of $150,000 on Burillo de Larrea when she retained the benefits of Golden Yacht's services—$80,000 worth for which she did not pay at all and $69,832.85 worth of which she retained through the chargebacks, ECF No. [53] ¶ 59; (2) Burillo de Larrea was aware of the benefits conferred on her at her own request, *id.* ¶ 60; (3) Burillo de Larrea retained the benefits of the services performed, *id.* ¶ 61; and (4) it would be inequitable for her to keep the benefits of those services, *id.* ¶ 62. The services performed by Golden Yacht include: changing the flag of the Yacht, *id*. ¶ 24(a); maintenance work, *id.* ¶ 24(b); repairs, marina costs, *id.* ¶ 24(d); diesel, *id.* ¶ 24(g); and motors and generators, *id.* ¶ 24(h).

Case No. 21-cv-22324-BLOOM/Otazo-Reyes

Whether a party did or did not receive a direct benefit from the other party is a question of fact that often cannot be resolved at the motion to dismiss stage. *See Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC,* 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009); *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279 (S.D. Fla. 2009) ("[I]f Plaintiffs have alleged that they conferred a benefit, whether a benefit was actually conferred is a factual question that cannot be resolved on a motion to dismiss."); *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1237 (S.D. Fla. 2015) (quoting the same). For the purposes of a motion to dismiss, Golden Yacht has sufficiently alleged each of the elements of unjust enrichment against Burillo de Larrea, in particular that a benefit was conferred on Burillo de Larrea by her retention of the services to the Yacht without fully paying for those services.

### 3.   *Count IV–Unjust Enrichment against Soleado*

Soleado next seeks dismissal of Defendant's unjust enrichment counterclaim (Count IV). ECF No. [57] at 8. Soleado argues that the chargebacks and the unpaid $80,000 worth of services were not a benefit conferred on Soleado because the chargebacks were issued to Burillo de Larrea's personal American Express account. ECF No. [57] at 8. Therefore, any benefit was conferred on Burillo de Larrea who initiated and received the chargebacks, rather than on Soleado. ECF No. [66] at 3. Soleado further alleges that Golden Yacht did not explain how Soleado benefitted from the chargebacks or how Golden Yacht conferred this benefit on Soleado. *Id.* Golden Yacht responds that it clearly alleges that a benefit was conferred on Soleado "by way of the chargebacks and as a result of Burillo de Larrea's refusal to pay." ECF No. [53] ¶ 66. The Court agrees with Golden Yacht that its allegations are sufficient.

Golden Yacht has alleged that (1) it had conferred a direct benefit of $150,000 on Soleado by way of Burillo de Larrea's chargebacks and as a result of Burillo de Larrea's refusal to pay Golden Yacht for services and expenses contracted for the benefit of Soleado, ECF No. [53] ¶ 66;

(2) Soleado was aware of the benefits conferred on it at Burillo de Larrea's request, *id.* ¶ 67; (3) Soleado retained the benefits of the services performed and expenses incurred by Golden Yacht, *id.*  ¶¶ 69, 70; and (4) it would be inequitable for her to keep the benefits of those services, *id.* ¶ 71.

### 4.      *Count V–Promissory Estoppel against Burillo de Larrea*

Finally, Burillo de Larrea seeks dismissal of Defendant's promissory estoppel counterclaim against Burillo de Larrea (Count V). ECF No. [57] at 8. Burillo de Larrea argues that Golden Yacht's promissory estoppel claim is precluded by the existence of an express contract between the parties, and that a promise to perform under a contract cannot constitute promissory estoppel. ECF No. [57] at 8. Golden Yacht cites to various state court cases in support of the contention that claims of promissory estoppel and breach of contract can be simultaneously pursued. ECF No. [59] at 13,14. The Court agrees with Burillo de Larrea.

As noted above, it is well established that a plaintiff may pursue "the alternative claims of breach of contract, unjust enrichment and promissory estoppel ***in separate counts***." *JI-EE Indus. Co.*2010 WL 1141103, at *1 (citations omitted) (emphasis added); *Doe v. Roe*, No. 17-23333-CIV, 2018 WL 4698886, at *2 (S.D. Fla. Sept. 29, 2018). However, while alternative claims are permissible, "a complaint cannot allege an express agreement in a claim for unjust enrichment or promissory estoppel." *JI-EE Indus. Co.*2010 WL 1141103, at *1.

Here, Golden Yacht incorporated by reference the allegations set forth in paragraphs 1 through 43 of the Counterclaim. ECF No. [53] ¶ 73. Those paragraphs contain allegations of an express agreement, particularly paragraphs 19 through 24, which specifically discuss the 2017 Charter Agreement. *See id.* ¶¶ 19-24.  The promissory estoppel count includes allegations of the 2017 Charter Agreement. *See id.* ¶¶ 75-76, 80. Notably, the promissory estoppel count is not pleaded in the alternative. Accordingly, because Golden Yacht alleges an express agreement (the

2017 Charter Agreement) in its claim of promissory estoppel, Count V of the Counterclaim is dismissed.

### IV.   Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Plaintiff's Motion to Dismiss, **ECF No. [57]**, is **GRANTED IN PART AND DENIED IN PART**.

2.  Counts II and V are **DISMISSED WITH PREJUDICE**.

3.  Plaintiff shall file an Answer to the Counterclaim **no later than April 29, 2022**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 15, 2022.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

13