UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-22324-BLOOM/Elfenbein

**MONICA BURILLO DE LARREA**,

    Plaintiff,

v.

**GOLDEN YACHT CHARTERS, INC.**,
*et al*,
    Defendants.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO STRIKE**

    **THIS CAUSE** is before the Court on Plaintiff Monica Burillo De Larrea's ("Plaintiff") Motion to Strike Affirmative Defenses (the "Motion"). *See* ECF No. [116]. The Honorable Beth Bloom referred the Motion to me for a Report and Recommendation. *See* ECF No. [118]. For the reasons explained below, I respectfully **RECOMMEND** that the Motion to Strike, **ECF No. [116]**, be **GRANTED in part and DENIED in part**.

    **I.**    **BACKGROUND**

    In December 2024, Plaintiff initiated proceedings supplementary under § 56.29, Florida Statutes, to collect on a $2,000,000 final judgment entered by this Court against Defendants Golden Yacht Charters, Inc. ("Golden Yacht") and its principal, Juan Rojas ("Rojas"). *See* ECF Nos. [97], [101], and [103]. Despite writs of execution, no funds have been recovered, and the execution remains valid and outstanding. *See* ECF No. [101] at 2. Plaintiff contends recovery has been thwarted because, soon after her demand letter, Rojas and Jacqueline Kalaptchian ("Kalaptchian") formed Book GYC LLC ("Book GYC") and transferred Golden Yacht's assets to Book GYC. *See id*. at 3; ECF No. [104] at ¶¶20-29. She alleges Book GYC is essentially Golden

Yacht under a new name, and Rojas and Kalaptchian failed to observe corporate separateness. *See id*.; ECF No. [104] at ¶¶12-24. Since the underlying suit was filed, Rojas and Kalaptchian allegedly caused Golden Yacht to transfer $401,634 to their accounts without consideration and caused Book GYC to transfer another $751,450.66 on the same basis. *See id*.; ECF No. [104] at ¶¶25-28. Plaintiff alleges Book GYC is a continuation of Golden Yacht and that these transfers were made to evade satisfaction of the final judgment. *See* ECF No. [104] at ¶¶ 33–36. Given these facts, the Court granted Plaintiff's request to implead Kalaptchian and Book GYC as Supplemental Defendants ("Defendants") and proceed supplementary under Florida Statute § 56.29. *See* ECF No. [103]; ECF No. [104].

On April 11, 2025, Defendants filed their Answer and Affirmative Defenses asserting seventeen affirmative defenses. *See* ECF No. [112]. On May 2, 2025, Plaintiff filed its Motion requesting that the Court strike all the affirmative defenses. *See* ECF No. [116]. In the Motion, Plaintiff argues that the First and Second Affirmative Defenses should be stricken because they merely argue that Plaintiff has failed to state a claim, which is not a valid defense. *See id*. at 3-4. As to the Third, Fourth, Eighth, and Fourteenth Affirmative Defenses, Plaintiff argues that they are not true defenses as they merely "challenge[] elements of [Plaintiff's] relevant claims." *See id*. at 4. Regarding the Fifth, Sixth, Seventh, Fifteenth, and Sixteenth Affirmative Defenses, Plaintiff argues that "do not assert any legal bar precluding Defendants' liability under theories of alter ego, mere continuation, and/or fraudulent transfer, but simply challenge and deny the factual allegations of de Larrea's claims." *See id*. at 5. As to the Tenth Affirmative Defense, Plaintiff argues that it is "not an affirmative defense but an improper reservation of a right to assert a potential statute of limitations defense." *See id*. at 7. Regarding the Eleventh and Thirteenth Affirmative Defenses, Plaintiff argues they fail to plead facts necessary to establish defenses for

equitable estoppel and unclean hands and "improperly seek[]to attack the Judgment rather than raise a defense to the allegations of the Supplemental Complaint." *See id*. at 8-9. As to Twelfth Affirmative Defense, Plaintiff argues that "laches is insufficient as a matter of law as laches does not apply to actions for damages, as de Larrea has filed here." *See id*. at 8. And, regarding the Seventeenth Affirmative Defense, Plaintiff argues Defendant's assertion that "monetary transfers cannot be subject to avoidance is legally baseless." *See id*. at 9.

Defendants thereafter filed their Response to the Motion (the "Response") arguing that striking defenses under Rule 12(f) is a drastic, disfavored remedy, and in this District, affirmative defenses need only provide fair notice under Rule 8 — not satisfy "the heightened pleading standard of *Twombly* and *Iqbal*." *See* ECF No. [122] at 1-2. Defendants' mismatch numbering and classification of their defenses and altogether fail to address several arguments Plaintiff raises regarding the Fourth, Sixth, Eighth, Ninth, Fourteenth, Fifteenth, Sixteenth, and Seventeenth Affirmative Defenses. Defendants argue that the First, Second, Third, Fifth, Seventh, Tenth, and Thirteenth Affirmative Defenses either provide fair notice under Rule 8 or are merely a denial that should be construed as such. *See id*. at 4-6. The "failure to state a claim" allegations are denials; the good-faith and reasonably equivalent value defenses under the Florida Uniform Fraudulent Transfer Act ("FUFTA"), § 726.109(1), raise fact questions about services and value exchanged; the statute of limitations is properly preserved; and the equitable defenses — unclean hands, *in pari delicto*, waiver/estoppel, and equitable bar — provide sufficient notice, are fact-intensive, and are not suitable for resolution on the pleadings. *See id*. Defendants also argue that the Fifth and Seventh Affirmative Defenses (incorrectly numbered as 13 and 14 in the Response) contest alter-ego and successor-liability theories, which go to the merits rather than pleading sufficiency. *See id*. at 5-6. Because none of the defenses are patently frivolous or clearly invalid, Defendants argue

3

that the Court should deny the motion or, alternatively, treat any mislabeled defenses as specific denials. *See id*. at 3.

In her Reply, Plaintiff argues that Defendants largely sidestep the Motion's substance, failing to address Judge Bloom's standard, that bare-bones or legally insufficient affirmative defenses must be stricken, and that the threshold for striking has been met here. *See* ECF No. [126] at 1. The Reply also notes pervasive confusion in Defendants' Response caused by misnumbered and mismatched defenses. *See id*. at 2. On the merits, it states that the First and Second Affirmative Defenses (failure to state a claim) are not valid affirmative defenses, and the case Defendant cited does not consider a failure-to-state-a-claim defense. *See id*. The Third Affirmative Defense (good faith/reasonably equivalent value) is a mere denial of elements and should be stricken. *See id*. at 3. The Tenth Affirmative Defense (statute of limitations) is an impermissible reservation of rights and facially inapplicable because the identified transfers fall within the four-year limitations period. *See id*. The equitable theories — unclean hands, *in pari delicto*, equitable bar, waiver/estoppel, and laches — are inadequately pled, not directly related to the claims against these Defendants (and laches does not apply to damages; nor did Defendants assert waiver in their Answer). *See id*. at 3-4. Finally, Plaintiff argues the Fifth and Seventh Affirmative Defenses (no successor liability; no unity of interest/alter ego) are concessions of denials, not affirmative defenses. *See id*. at 4.

## II.    LEGAL STANDARDS

### A. Motions to Strike Generally

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). By definition, a "pleading" is one of these seven documents: (1) "a complaint," (2) "an answer to a complaint, (3) "an answer to a

counterclaim designated as a counterclaim," (4) "an answer to a crossclaim," (5) "a third-party complaint," (6) "an answer to a third-party complaint," and (7) "if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a).

For purposes of a motion to strike, a matter is redundant if it "essentially repeats" information or arguments that have already appeared in another filing by that party. *See Pro Transp., Inc. v. Great Am. Assurance Co.*, No. 17-CV-20724-KMM, 2018 WL 11352652, at *11 (S.D. Fla. Jan. 30, 2018); *Owens v. Blue Tee Corp.*, 177 F.R.D. 673, 678 (M.D. Ala. 1998) ("'Redundant' matter consists of allegations that constitute a needless repetition of other averments." (quoting 5A Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 1382 at 704 (1990))); 2 Moore's Federal Practice § 12.37 (Matthew Bender 3d Ed. 2024) ("[C]ourts will strike a claim as 'redundant' when it essentially repeats another claim in the same complaint."). A matter is immaterial if it "has no value in developing the issues of the case," is impertinent if it is "irrelevant to the issues" or "not properly in issue between the parties," and is scandalous if it is "both grossly disgraceful (or defamatory) and irrelevant to the action or defense." *See Blake v. Batmasian*, 318 F.R.D. 698, 700 nn.2–4 (S.D. Fla. 2017).

"The purpose of a motion to strike is to clean up the pleadings, remove irrelevant or otherwise confusing materials, and avoid unnecessary forays into immaterial matters." *Id.* at 700. "Courts consider striking a pleading to be a drastic remedy and generally view motions to strike with disfavor." *Gill-Samuel v. Nova Biomedical Corp.*, 298 F.R.D. 693, 699 (S.D. Fla. 2014) (quotation marks omitted). "A motion to strike will therefore usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Id.* (quotation marks omitted); *see also Blake*, 318 F.R.D. at 700–01 ("[A] motion to strike will be granted only if the matter sought to be omitted has no possible relationship to the

controversy, may confuse the issues, or otherwise prejudice a party."); *Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 700 (S.D. Fla. 2013) ("Relief under Rule 12(f) is granted sparingly. . . ."). "If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied." *Blake*, 318 F.R.D. at 700.

### B. Affirmative Defenses Generally

"An affirmative defense is a defense which admits the essential facts of a complaint and sets up other facts in justification or avoidance." *Losada v. Norwegian (Bahamas) Ltd.*, 296 F.R.D. 688, 690 (S.D. Fla. 2013) (quotation marks omitted); *see also Gomez v. Bird Auto., LLC*, 411 F. Supp. 3d 1332, 1334 (S.D. Fla. 2019) ("An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matter." (quotation marks omitted)). "A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." *Losada*, 296 F.R.D. at 690 (quotation marks omitted); *see also Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005) (noting that a defense that "simply points out a defect or lack of evidence in a plaintiff's case is not an affirmative defense").

"Affirmative defenses which simply deny the complaint's allegations are also not affirmative defenses." *Losada*, 296 F.R.D. at 690 (quotation marks omitted); *Solidda Grp., S.A. v. Sharp Elecs. Corp.*, No. 12-21411-CIV, 2012 WL 12863887, at *1 (S.D. Fla. Aug. 31, 2012) ("Denying an element of a plaintiff's prima facie case, such as damages, does not give rise to an affirmative defense."). And "[f]ailure to state a claim is not an affirmative defense." *Havana Docks Corp. v. Carnival Corp.*, 592 F. Supp. 3d 1088, 1194 (S.D. Fla. 2022).

"[D]istrict courts disagree over the standard required for pleading affirmative defenses." *Tsavaris v. Pfizer, Inc.*, 310 F.R.D. 678, 680 (S.D. Fla. 2015). "Some courts have held that

affirmative defenses are subject to the heightened pleading standard of Rule 8(a) set forth in" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Tsavaris*, 310 F.R.D. at 680. "Under this standard, an affirmative defense that merely offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration adopted, quotation marks omitted). "Instead, a defense would have to contain enough factual matter to raise a right to relief above the speculative level." *Id.* (quotation marks omitted).

"Other courts, however, have held that the heightened pleading standard of *Twombly* and *Iqbal* does not apply to affirmative defenses." *Id.* at 680–81. Those courts apply the "less stringent standard" of Federal Rule of Civil Procedure 8(b) and (c), which require only that a party "state in short and plain terms its defenses to each claim asserted against it," Fed. R. Civ. P. 8(b)(1)(A), "affirmatively state any avoidance or affirmative defense," Fed. R. Civ. P. 8(c)(1). *See Tsavaris*, 310 F.R.D. at 681; *cf. Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988) ("The purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it.").

While neither the Supreme Court nor the Eleventh Circuit has resolved the disagreement among the district courts, many courts in this District have held "that a lower pleading standard applies to affirmative defenses." *See Tsavaris*, 310 F.R.D. at 682 (Moore, J.) ("[T]his Court joins the growing number of courts in this circuit and others in finding that a lower pleading standard applies to affirmative defenses. Such an approach is faithful both to the letter and the spirit of Rules 8(b) and (c), as revealed through the plain language of Rule 8 and Eleventh Circuit precedent."); *accord, e.g.*, *Dionisio v. Ultimate Images & Designs, Inc.*, 391 F. Supp. 3d 1187, 1192–93 (S.D. Fla. 2019) (Bloom, J.); *Colonial Van Lines, Inc. v. Safeway Moving, LLC*, No. 9:24-CV-80892, 2025 WL 458491, at *3 (S.D. Fla. Feb. 11, 2025) (Leibowitz, J.); *Lalusis v. NCL (Bahamas) Ltd.*,

No. 24-CV-21354, 2024 WL 3183238, at *2 (S.D. Fla. June 26, 2024) (Altman, J.); *Brito v. Palm Springs Mile Assocs., Ltd.*, 2021 WL 2634863, at *1 (S.D. Fla. Feb. 3, 2021) (Scola, J.); *Sparta Ins. Co. v. Colareta*, 2013 WL 5588140, at *3 (S.D. Fla. Oct. 10, 2013) (Rosenbaum, J.). That includes the undersigned. *See Ramindesign, LLC v. Skarzynski*, No. 23-CV-24838, 2025 WL 271652, at *4 (S.D. Fla. Jan. 23, 2025) (Elfenbein, Mag. J.), *R.&R. adopted*, No. 23-24838-CIV, 2025 WL 485965 (S.D. Fla. Feb. 13, 2025) (Lenard, J.).

### C. Motions to Strike Affirmative Defenses Specifically

An "affirmative defense must be stricken when the defense is comprised of no more than bare-bones, conclusory allegations or is insufficient as a matter of law. A defense is insufficient as a matter of law only if: (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law." *Dionisio*, 391 F. Supp. 3d at 1191–92 (citations and quotation marks omitted); *see also Tsavaris*, 310 F.R.D. at 680 ("[A] motion to strike an affirmative defense is typically denied unless the defense (1) has no possible relation to the controversy, (2) may cause prejudice to one of the parties, or (3) fails to satisfy the general pleading requirements of Rule 8 of the Federal Rules of Civil Procedure."). "When an affirmative defense is mislabeled and is more properly a denial, the Court should not strike the claim but should treat it as a specific denial." *Losada*, 296 F.R.D. at 691.

Put simply, courts in this District use this "framework" when evaluating a motion to strike affirmative defenses: "*First*, we ask whether the 'affirmative defense' is just a denial masquerading as an affirmative defense. *Second*, if it is an eligible affirmative defense, we determine whether it gives the Plaintiffs fair notice of the defense and the grounds upon which it rests. If the answer to both questions is *yes*, then the affirmative defense survives." *See Mad Room, LLC v. City of Miami*, No. 21-CV-23485, 2024 WL 2776173, at *2 (S.D. Fla. May 30, 2024). Some courts have viewed

affirmative defenses to be mere "denials masquerading as affirmative defenses" when they "suggest" a plaintiff's "own conduct (and not the [defendants']) was the cause of the[] alleged damages" because that is "simply denying its liability." *See id.* at *4; *but see id.* (acknowledging that other courts in this District "have sometimes declined to strike 'own conduct' affirmative defenses (like these)").

### III. DISCUSSION

As noted above, Plaintiff asks the Court to strike all of Defendants' affirmative defenses. *See* ECF No. [116] at 1. Specifically, Plaintiff argues the defenses must be stricken for four reasons: (1) as to the First and Second Affirmative Defenses, because failure to state a claim is not an affirmative defense; (2) as to the Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Fourteenth, Fifteenth, and Sixteenth Affirmative Defenses, because they "are mere denials"; (3) as to the Eleventh and Thirteenth Affirmative Defenses, because they are legally insufficient as they fail to allege the elements for each defense; and (4) as to the Tenth, Twelfth, and Seventeenth Affirmative Defenses, because they are legally or factually inapplicable to the facts and claims at issue. *See* ECF No. [116]. The Court will take each argument in turn.

#### A. Affirmative Defenses for "Failure to State a Claim"

Plaintiff's first argument is directed at Defendants' First and Second Affirmative Defenses. *See* ECF No. [116] at 3-4. In the First Affirmative Defense, Defendants assert the "Supplemental Complaint fails to allege sufficient ultimate facts to support the legal theories asserted, including but not limited to fraudulent transfer under Chapter 726, successor liability, and alter ego theories. The pleading is conclusory and fails to plead with particularity the basis for imposing liability on either Supplemental Defendant." *See* ECF No. [112] at 7. Similarly, the Second Affirmative Defense merely states that "Count I fails to allege any of the necessary elements for a declaratory

9

judgment claim." *See id*. at 7-8.  But "[f]ailure to state a claim is not an affirmative defense." *Havana Docks*, 592 F. Supp. 3d at 1194; *cf.* Fed. R. Civ. P. 12(b)(6) (allowing parties to raise a defense of failure to state a claim upon which relief can be granted in a pre-answer motion). Defendants' citation to *Wyne v. Carnival Corp.*, 2022 WL 6127876 (S.D. Fla. Oct. 7, 2022) is not persuasive as it does not deal with a defense of failure to state a claim.  As a result, the Court agrees with Plaintiff that Defendants' First and Second Affirmative Defenses should be stricken. Accordingly, I respectfully **RECOMMEND** that the Motion to Strike, **ECF No. [116]**, be **GRANTED** as to Defendants' First and Second Affirmative Defenses.

### B. Affirmative Defenses that are "Mere Denials"

Plaintiff's second and third arguments are directed at Defendants' Third through Ninth and Fourteenth through Sixteenth Affirmative Defenses.  *See* ECF No. [116] at 4-6.  Plaintiff's second and third arguments are virtually identical, claiming that these defenses are mere denials of Plaintiff's claims or function as denials of elements of Plaintiff's prima facie case.  *See id*.  As to the Third Affirmative Defense, Defendants assert that "[a]ny funds or assets received by Defendants were received in good faith and in exchange for reasonably equivalent value…"  *See* ECF No. [112] at 8.  Florida law expressly provides for this affirmative defense, stating that "[a] transfer or obligation is not voidable under s. 726.105(1)(a) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee."  § 726.109(1), Fla. Stat; *see eCapital Commercial Fin. Corp. v. Hitachi Capital Am. Corp.*, No. 21-CV-60152, 2022 WL 1320405, at *9 (S.D. Fla. May 2, 2022) (recognizing this as an affirmative defense).  Accordingly, the Third Affirmative Defense is an appropriate affirmative defense and should not be stricken.

The remaining affirmative defenses in this category are either strict denials of Plaintiff's

10

claims or function as such.  *See* ECF No. [112] at 8-10, 11.  Put differently, they simply point out defects or a lack of evidence in Plaintiff's case.  *See Morrison*, 434 F. Supp. 2d at 1318; *Losada*, 296 F.R.D. at 690; *Solidda Grp.*, 2012 WL 12863887, at *1.

All of Plaintiff's fraudulent transfer claims (Counts III through XI) are pled under Florida Statute § 726.105(1).  *See* ECF No. [104] at ¶¶45-66.  Section 726.105(1) provides creditors two theories by which they may recover fraudulent transfers (Plaintiff asserts both): "an actual fraud theory, under subsection (a), and a constructive fraud theory, under subsection (b)."  *See Oginsky v. Paragon Properties of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1369 (S.D. Fla. 2011) (quoting *Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1318 (M.D. Fla. 2009)).

To state a claim for actual fraud, plaintiffs must allege that the debtor made the transfer "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.]" Fla. Stat. § 726.105(1)(a).   Section (2) delineates non-exhaustive factors courts may consider when determining actual intent under section (1)(a), including whether: "[t]he transfer or obligation was to an insider[;]" "[t]he debtor retained possession or control of the property transferred after the transfer[;]" "[t]he transfer was of substantially all the debtor's assets[;]" "[t]he debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred[;]" and "[t]he debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." *See* Fla. Stat. § 726.105(2)(a)(b)(e)(i) and (k).  FUFTA defines an insider to a corporation, like Golden Yachts, as a director, officer, general partner, or person in control of the debtor or a relative to any of those individuals, a partnership in which the debtor is a general partner, or a general partner in a partnership described in subparagraph 4.  *See* Fla. Stat. § 726.102(8)(b).

To state a claim for constructive fraud, plaintiffs must allege that the debtor made the transfer "[w]ithout receiving a reasonably equivalent value in exchange for the transfer… **and** the debtor: (1) [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; **or** (2) [i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." *See* Fla. Stat. § 726.105(1)(b) (emphasis added).

The Fourth and Ninth Affirmative Defenses contain explicit denials of Defendants' intent, *see* ECF No. [112] at 8, 9-10, which would prevent Plaintiff from proving its actual fraud theory. And the remaining affirmative defenses, all deny individual factors considered when determining actual intent. Specifically, the Fifth, Sixth, Seventh, Fifteenth, and Sixteenth Affirmative Defenses all relate to the corporate separateness of Book GYC and Golden Yachts and Rojas and Book GYC's status as an "insider." The Fifth Affirmative Defense claims "Book GYC is not a successor entity to Golden Yacht." *See* ECF No. [112] at 9. The Sixth Affirmative Defense argues that Book GYC is a distinct legal entity and "there has been no commingling of funds or misuse of the corporate form." *See id*. The Seventh Affirmative Defense states that Book GYC is not the alter ego of Golden Yacht and there is no "unity of interest or domination by Rojas or Golden Yachts." *See id*. The Fifteenth Affirmative Defense argues that "Book GYC LLC was formed independently for legitimate business reasons." *See id*. at 11. And the Sixteenth Affirmative Defense argues that "Juan Rojas has no financial interest in, or control over, Book GYC LLC." *See id*. Although these defenses are not explicit denials, they function in practice as denials of elements of Plaintiff's prima facie case for actual intent; specifically, that the subject transfers did not involve "insiders," or Goden Yacht and Rojas maintain control of the transferred property. *See*

Fla. Stat. §§ 726.105(2)(a)(b) and (k); 726.102(8)(b).

Similarly, in the Eighth Affirmative Defense, Defendants claim that Plaintiff "cannot show that Golden Yacht was insolvent or rendered insolvent at the time of any alleged transfers, a necessary element of constructive fraudulent transfer under § 726.106, Fla. Stat.[1]" *See* ECF No. [112] at 9. In the Fourteenth Affirmative Defense, Defendants assert that Plaintiff "has not demonstrated that any alleged transfers or entity formations caused her inability to recover under the Final Judgment." *See id*. at 11. These defenses are denials to the factors (e) and (i) of actual intent under § 726.105(2), including that "[t]he transfer was of substantially all the debtor's assets[;]" and "[t]he debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." *See* § 726.105(2)(e)(i). Additionally, the Eighth Affirmative Defense denies Golden Yacht's insolvency, which is also a necessary element of constructive fraud under § 726.105(1)(b).

As discussed above, affirmative defenses that merely point out a defect or a lack of evidence in Plaintiff's prima facie case are, by definition, not affirmative defenses. *See Losada*, 296 F.R.D. at 690; *In re Rawson*, 846 F.2d at 1349; *Morrison*, 434 F. Supp. 2d at 1318. They are instead denials masquerading as affirmative defenses, so the Court should treat Defendants' Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Fourteenth, Fifteenth, and Sixteenth Affirmative Defenses as denials instead of striking them. *See Grovenor House, L.L.C. v. E.I. Du Pont De Nemours And Co.*, No. 09-CV-21698, 2010 WL 3212066, at *3 (S.D. Fla. Aug. 12, 2010) (explaining that when "a defendant mislabels a denial as an affirmative defense, the proper remedy is not to strike the claim, but rather to treat it as a specific denial."). Accordingly, I respectfully **RECOMMEND** that the Motion to Strike, **ECF No. [116]**, be **DENIED** as to Defendants' Third

---

[1] Defendants seemingly meant to cite to § 726.105 as Plaintiff's constructive fraud claims are plead under § 726.105.

Affirmative Defense as it is a proper affirmative defense, and be **DENIED** as to Defendants' Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Fourteenth, Fifteenth, and Sixteenth Affirmative Defenses and that these instead be treated as denials.

### C. Affirmative Defenses that Fail to Provide "Sufficient Facts" and "Notice"

Plaintiff argues that Defendants' Eleventh and Thirteenth Affirmative Defenses are legally insufficient as they fail to allege the elements for each defense. *See* ECF No. [116] at 7-9. In the Eleventh Affirmative Defense, Defendants assert that Plaintiff "is equitably estopped from seeking relief due to her own conduct, including failing to timely to enforce alleged rights after becoming aware of Rojas's management style and contractual arrangements with yacht owners. This delay has prejudiced Supplemental Defendants, who relied on the apparent absence of a dispute to build an independent enterprise." *See* ECF No. [112] at 10. Plaintiff claims that the "defense is devoid of any allegations suggesting that de Larrea was aware of the true facts or misrepresented material facts, much less with the intention of having Defendants rely on such alleged misrepresentations." *See* ECF No. [116] at 8. Plaintiff also claims that Defendants fail to "provide any context for their allegations regarding" Plaintiff's knowledge about Rojas's management style and contractual arrangements, which fails to provide Plaintiff notice of the purported defense. *See id*. (citing *Home Mgmt. Sols., Inc. v. Prescient, Inc.*, 2007 WL 2412834, at *4 (S.D. Fla. 2007)). Plaintiff also notes that this defense "***seems*** to be an attempt to relitigate the Final Judgment rather than a defense to the allegations of the Supplemental Complaint." *See id*. at 8 (emphasis added).

These arguments are unconvincing. In support of its argument to strike, Plaintiff cites *Home Mgmt. Sols*. There, the court applied the heightened pleading standard set forth in *Twombly* and *Iqbal*. As already explained, the undersigned concludes that a defendant only needs to allege sufficient detail to put a plaintiff on notice of the defense it is raising.

14

*See* discussion *supra* II.B. Therefore, the allegations in the Eleventh Affirmative Defense are sufficient to put Plaintiff on notice of the defense because estoppel is well-established affirmative defenses. *See*, *e.g.*, *Jones v. Kohl's Dep't Stores, Inc.*, 2015 WL 12781195, at *2 (S.D. Fla. Oct. 16, 2015) ("Those affirmative defenses which lack factual particularity are sufficient — boilerplate but well-recognized as valid defenses are considered sufficiently stated." (citations omitted)); *Guarantee Ins. Co. v. Brand Mgmt. Serv., Inc.*, No. 12-CV-61670, 2013 WL 4496510, at *5 (S.D. Fla. Aug. 22, 2013) (denying a motion to strike affirmative defenses of estoppel, waiver, laches, and unclean hands even though they contained no factual support and were alleged in general terms). Additionally, Plaintiff's assertion that this defense attempts to relitigate the Final Judgment offers no specifics. On its face, the defense targets the fraudulent-transfer elements of the Complaint (intent and nexus to the debt). Absent a concrete collateral-attack showing a challenge to the judgment, it should be treated as a defense to the fraudulent transfers.

In the Thirteenth Affirmative Defense, Defendants allege Plaintiff has unclean hands because Plaintiff "approved personal charges on corporate accounts; benefited from the Charter Agreement's tax and liability structure; and failed to mitigate any alleged damages[,]" *See* ECF No. [112] at 10. Plaintiff argues that the Thirteenth Defense "is legally insufficient as Defendants did not — and cannot — allege that de Larrea engaged in inequitable conduct that personally injured Defendants and, thus, should be stricken." *See* ECF No. [116] at 8. Plaintiff argues that this defense also "improperly seeks to attack the Judgment rather than raise a defense to the allegations of the Supplemental Complaint." *See id*.

The affirmative defense of unclean hands is well established, and with such being the case, Defendants need not provide detailed allegations to raise such a defense and to put Plaintiff on notice. *See Guarantee Ins. Co.*, 2013 WL 4496510, at *5. Here, the Thirteenth Affirmative

Defense contains sufficient allegations to satisfy the lower pleading standard applied to affirmative defenses and to place Plaintiff on notice of the defense Defendants are raising. *See Jones*, 2015 WL 12781195, at *2. Moreover, "it is not appropriate for the Court to consider the merits of any affirmative defense [on a motion to strike] because the Court accepts all well-pled facts as true and only evaluates the legal sufficiency of an affirmative defense." *Wyndham Vacation Ownership, Inc. v. Montgomery Law Firm, LLC*, 2020 WL 2128498, at *4 n.2 (M.D. Fla. May 5, 2020). Finally, Plaintiff's argument that this defense attacks the underlying judgment fails for the same reasons as in the Eleventh Affirmative Defense.

Accordingly, I respectfully **RECOMMEND** that the Motion to Strike, **ECF No. [116]**, be **DENIED** as to Defendants' Eleventh and Thirteenth Affirmative Defenses.

### D. Affirmative Defenses that are Inapplicable as a Matter of Law or Fact

Plaintiff argues that Defendants' Tenth, Twelfth, and Seventeenth Affirmative Defenses are legally or factually inapplicable to the facts and claims at issue. *See* ECF No. [116] at 7-9. In the Tenth Affirmative Defense, Defendants argue that "[t]o the extent" the Complaint seeks relief barred by the four-year statute of limitations, *i.e.*, any transfers prior to June 2019, such claims are barred. *See id.* at 7. In the Twelfth Affirmative Defense, Defendants allege Plaintiff's claims are barred by laches because Plaintiff's years-long delay in asserting its claims caused Defendants to rely on the apparent lack of a dispute in restructuring its businesses. *See id.* at 8. In the Seventeenth Affirmative Defense, Defendants argue that monetary transfers cannot be "set aside" and "Plaintiff may only seek to recover a money judgment with respect to alleged fraudulent transfers of money." *See id.* at 11.

As to the Tenth Affirmative Defense, the Motion argues that the alleged fraudulent transfers, at the earliest, began in June 2021. *See* ECF No. [116] at 7. Therefore, Defendants'

statute of limitations defense is inapplicable to the Complaint's allegations and should be stricken. *See id*. As to the Twelfth Affirmative Defense, the Motion argues that "laches does not apply to actions for damages," citing *In re Checking Account Overdraft Litig.*, Case No. 09–MD–02036, 2013 WL 5774287, at *3 (S.D. Fla. Oct. 14, 2013). *See id*. at 8. As to the Seventeenth Affirmative Defense, the Motion argues that avoidance of the relevant monetary transfers is an appropriate remedy under Florida law. *See id*. at 9.

Motions to strike are meant "to clean up the pleadings, remove irrelevant or otherwise confusing materials, and avoid unnecessary forays into immaterial matters." *Blake*, 318 F.R.D. at 700. Turning to the Tenth Affirmative Defense, transfers prior to June 2019 have not been asserted in the lawsuit, and thus, are irrelevant, confusing, and immaterial. Unpled facts certainly have "no value in developing the issues of the case," are "irrelevant to the issues," and are "not properly in issue between the parties." *See id.* at 700 nn.2–3. Indeed, they have "no possible relationship to the controversy." *See id.* at 700–01; *Gill-Samuel*, 298 F.R.D. at 699. As a result, an affirmative defense directed at transfers not at issue in this lawsuit is both "an insufficient defense" and an "immaterial" or "impertinent" matter — the exact items courts are permitted to strike. *See* Fed. R. Civ. P. 12(f). For that reason, the Court finds it appropriate to strike Defendants' Tenth Affirmative Defense.

The Seventeenth Affirmative Defense fails as a matter of law. As explained by Plaintiff, FUFTA defines a "transfer" to include a "payment of money," *see* Fla. Stat. § 726.102(14), and expressly authorizes "avoidance of the transfer . . . to the extent necessary to satisfy the creditor's claim," *see* Fla. Stat. § 726.108(1)(a). Nothing in the statute carves out cash; to the contrary, § 726.108(2) confirms the court may permit execution on "the asset transferred or its proceeds," which plainly encompasses monetary transfers. Defendants' categorical assertion that money

transfers cannot be avoided contradicts FUFTA's text and, at most, misstates the scope of remedies (which remain subject to § 726.109's limitations, not a blanket prohibition). Because the defense is legally baseless and additional facts cannot cure it, the Court concludes that it should be stricken. While the Court is mindful that motions to strike are generally viewed with disfavor, *Gill-Samuel*, 298 F.R.D. at 699, and should be granted sparingly, *Williams*, 289 F.R.D. at 700, this situation is precisely the kind Rule 12(f) contemplates. As a result, the Court agrees that Defendants' Seventeenth Affirmative Defense should be stricken. *See* Fed. R. Civ. P. 12(f); *Blake*, 318 F.R.D. at 700–01.

The Twelfth Affirmative Defense, however, is not "insufficient as a matter of law." In support of its argument, Plaintiff cites *In re Checking Account Overdraft Litig.*, which addresses Arkansas law claims (none of which are fraudulent transfer claims) seeking only money damages. FUFTA expressly incorporates equitable doctrines, including laches: "Unless displaced by the provisions of ss. 726.101–726.112, the principles of law and equity . . . including . . . estoppel, laches . . . supplement those provisions." Fla. Stat. § 726.111. Florida courts likewise recognize laches can bar state fraud-based claims. *See Donovan v. Armour & Co.*, 33 So. 2d 601, 601–02 (Fla. 1948) (affirming dismissal where a fourteen-year delay demonstrated laches and no actionable fraud). Accordingly, laches is a permissible defense to FUFTA claims — particularly those seeking avoidance or other equitable relief (as Plaintiff does here) — and cannot be categorically stricken simply because Plaintiff also seeks monetary recovery.

Accordingly, I respectfully **RECOMMEND** that the Motion to Strike, **ECF No. [116]**, be **GRANTED** as to Defendants' Tenth and Seventeenth Affirmative Defenses and **DENIED** as to Defendants' Twelfth Affirmative Defense.

IV. **CONCLUSION**

For the reasons explained above, I respectfully **RECOMMEND** that:

1. Plaintiff's Motion to Strike, **ECF No. [116]**, be **GRANTED in part and DENIED in part**;

2. Plaintiff's request to strike Defendants' First, Second, Tenth, and Seventeenth Affirmative Defenses be **GRANTED**;

3. Plaintiffs' request to strike Defendants' Third, Eleventh, Twelfth, and Thirteenth Affirmative Defenses be **DENIED**; and

4. The Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Fourteenth, Fifteenth, and Sixteenth Affirmative Defenses be treated as specific denials.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE and ORDERED** in Chambers in Miami, Florida on August 18, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record